Boyd COFFMAN, Petitioner,

v.

Lynn BOMAR, Warden Tennessee State Penitentiary, Nashville, Tennessee, Respondent.

Civ. A. No. 3505.

United States District Court
M. D. Tennessee,
Nashville Division.

Aug. 9, 1963.

Robert H. Dedman, Nashville, Tenn., for petitioner.

Henry C. Foutch, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., for respondent.

WILLIAM E. MILLER, Chief Judge.

The petitioner, Boyd Coffman, was indicted in the Criminal Court of Washington County, Tennessee, on the 15th day of January, 1960, for the crime of robbery by the use of a deadly weapon as defined under the provisions of T.C.A. § 39–3901. He was also indicted under a second count in the same indictment as being a habitual criminal. Since it appeared that the petitioner was an indigent, the Court appointed two members of the Washington County Bar, J. E. Vaughan and B. B. Snipes, to represent him. Also, as the state sought the death penalty, the Court appointed a court reporter to report and transcribe the proceedings at state expense, as authorized by T.C.A. § 40–2010. The petitioner was tried under the indictment on January 29, 1960. He was found guilty under the first count of the offense of robbery by use of a deadly weapon. Under the second count charging that he was a habitual criminal he was found not guilty. His punishment was fixed at a term of twenty years in the state penitentiary.

Having first exhausted without success his available post-conviction remedy in the state courts, petitioner, on July 1, 1963, filed with this Court his petition for a writ of habeas corpus, challenging on Fourteenth Amendment grounds the validity of his conviction in the Washington County Criminal Court. On the same date the Court entered its order appointing Robert H. Dedman, an attorney of the Nashville Bar, to represent the petitioner and fixing July 16, 1963 as the date for a hearing upon the petition.

The attack made by the petitioner upon the validity of his conviction is two-fold. First, he insists that he was denied a fair trial and that his constitutional rights to due process of law were denied him in that he was required to be handcuffed and closely guarded by a number of armed officers during the entire trial before the jury. Secondly, petitioner contends that following his conviction and the entry of an order by the trial court overruling his motion for a new trial, he requested his court-appointed attorneys to perfect an appeal on his behalf to the Supreme Court of Tennessee, but that such attorneys failed to take the proper steps to perfect such appeal within the time allowed under state law. The result of such failure was, the petitioner contends, to deprive him of his absolute right of appeal under the applicable laws of Tennessee. Petitioner's insistence is that such failure on the part of the attorneys appointed by the court to represent him constituted a denial by the state of due process of law and the equal protection of the law as guaranteed by the Fourteenth Amendment, having the effect of invalidating his conviction.

After the petitioner was convicted on January 29, 1960, his attorneys filed a motion for a new trial which was heard by the Court on February 27, 1960. On that date an order was entered overruling the motion. The order is silent as to an appeal, and there is no other entry in the record of the trial making reference to or bearing upon an appeal or application for an appeal of petitioner's conviction. While there is some conflict in the evidence as to whether the petitioner requested his attorneys to take steps for an appeal, the clear preponderance of the proof is that the defendant did request that the appeal be perfected and was under the impression that necessary steps were being taken by his attorneys to this end until the time to take such an appeal had expired. The trial judge testified that on the day the motion for a new trial was heard he made inquiry of petitioner's attorneys as to whether there would be an appeal and he was advised that the petitioner did not desire to appeal but wanted to begin serving his sentence immediately. There is convincing evidence, however, that if the petitioner did make this representation to the Court through his attorneys, he changed his mind very soon thereafter and requested that his conviction be appealed to the Su-

preme Court of Tennessee. For example, on November 2, 1960, at a time when the matter should have been fresh on his mind, one of the court-appointed attorneys, Jack Vaughan, addressed a letter to the Assistant Attorney General of Tennessee at Nashville, presumably in response to a request for information as to what had occurred with reference to the appeal, in which he made the following statement:

"The last time I talked with Coffman, which was on the day when his motion for a new trial was heard, I believe that I told him that Mr. Snipes and I would talk the matter over, as to taking his case to the Supreme Court. After that time he wrote to Mr. Snipes several times but I never did hear from him. He was under the impression that his case would be appealed I am sure, but as I stated in my other letter to you, we could find no error in the record that would warrant an appeal. I did not at any time inform him of this, and I do not know if Mr. Snipes did or not."

On November 5, 1960, the same attorney wrote a letter to Ed R. Davies, an attorney of the Nashville Bar who was making inquiry into the same question, and this letter contains a similar statement:

"I do not recall that we said that we would appeal his case to the Supreme Court, but I do think we told him that we would consider it, but as I said, we could find no error on which to base an appeal. He wrote to Mr. Snipes several times but never did write to me. Soon thereafter Mr. Snipes retired from practice and moved away from here.

"I always try to do my best for any man under any kind of an indictment, but I do not and cannot afford to spend money on a Court appointed case which would have been necessary had I investigated all the things he told me. On the other hand I do not like to waste time on a case which would bring no reversible verdict in the Supreme Court. In this case I also considered the fact that here is a man who perhaps had had more experience in Criminal Courts than most attorneys, and also had the aid of the best criminal lawyers in this country over a period of twenty years, and from such has acquired a knowledge of the finer points of law from which a man can always make an effort to beat a rap. Most of his life has been spent in prison, which is one of the best places to study every type of a criminal defense as one can always find plenty of information fom his cell mates etc."

These letters, both written within a very few months after the trial, clearly corroborate the petitioner in his testimony that he requested the attorneys to appeal his conviction, that he was under the impression that they were doing so, and that he did not learn otherwise until after the time for perfecting an appeal had expired. The petitioner's testimony in this respect receives further corroboration from a series of letters written to the petitioner following his conviction by his other court-appointed attorney, B.B. Snipes, in reply to letters written by the petitioner himself. The tenor of these letters indicates that the petitioner had expected an appeal to be taken and that he was making inquiry to find out what the situation was. This attorney was not available as a witness and, consequently, there is no denial from him of the petitioner's testimony. Testifying at the hearing in the present case, Vaughan did not deny writing the letters above referred to, nor did he say that they did not represent the true facts. On the contrary, he conceded that the petitioner may have been under the impression that his case would be appealed, and he further stated that he and Snipes discussed the question of an appeal between themselves and decided against it because they were of the opinion that there was no error in the record upon which an appeal could be successfully prosecuted. He admits that this information, however, may not have

been communicated to the petitioner. The end result was that while the petitioner may have originally indicated to the trial court that an appeal would not be taken, he thereafter requested his court-appointed counsel to take an appeal, he expected that it would be accomplished, and he was never advised by them of their own private decision not to appeal.

Under the laws of Tennessee, after a motion for a new trial is overruled in a criminal case, a defendant is entitled as a matter of right to an appeal in the nature of a writ of error to the Supreme Court of the state. T.C.A. § 40–3401. As a condition to such an appeal, however, an appeal bond must be filed or the pauper oath taken within thirty days from the date of the order overruling the new trial motion, or within an extended period not exceeding thirty days if the application for the extension is made within the original thirty-day period. T.C.A. § 27–312. A defendant may also appeal a criminal conviction as a matter of right to the Supreme Court by filing the record for a writ of error, even though he has failed to file an appeal bond or to take the pauper oath within the time required to perfect an appeal in the nature of a writ of error. T.C.A. §§ 40–3402 and 27–601, 607. The writ of error may be moved for and obtained in the appellate court, or issued by the clerk of the appellate court in vacation, upon the filing of the transcript of the record in his office. T.C.A. § 27–602. The application to the clerk for issuance of the writ may be made within one year after the order appealed from, T.C.A. § 27–604, or within two years if the application is made to the appellate court or a judge thereof, T.C.A. § 27–605. Under state law, an appeal in the nature of a writ of error or an appeal by writ of error may be made upon the technical record alone, or both upon the technical record and the transcript of the evidence, if such evidence has been preserved by the timely filing in the trial court of a bill of exceptions. The bill of exceptions, duly authenticated and approved by the trial judge, T.C.A. § 27–110, must be filed within thirty days after the entry of the order overruling the motion for a new trial, unless within said thirty-day period an extension of time has been obtained from the court for filing such bill of exceptions, not to exceed an additional period of sixty days. T.C.A. § 27–111.

■ It is well settled under Tennessee law that unless the bill of exceptions is filed within the time allowed by statute it cannot be considered by an appellate court. Steadman v. State, 199 Tenn. 66, 282 S.W.2d 777; Scopes v. State, 152 Tenn. 424, 278 S.W. 57; National Refining Co. v. Littlefield, 142 Tenn. 689, 223 S.W. 140; Hickerson v. State, 141 Tenn. 502, 213 S.W. 917.

By T.C.A. § 40–2010, the trial court is vested with discretion to appoint a court reporter in a capital case in which the death penalty is sought, where the defendant is indigent and the court is required to appoint counsel for him. The statute prescribes, however, that if such court reporter is appointed, "[i]t shall be the duty of such court reporter to prepare an original and one (1) copy of the proceedings of said trial and to turn the same over to counsel appointed for such defendant to be used as his bill of exceptions." T.C.A. §. 40–2011. The mandatory character of this section is emphasized by the proviso "that where the sentence assessed by the trial jury shall be less than ten (10) years' confinement such court reporter need not prepare such transcript of the proceedings and shall be entitled to no pay therefor." Under T.C.A. § 40–2012, it is provided that the attorney appointed by the court to represent the defendant "shall file such bill of exceptions in duplicate and the clerk in preparing his transcript for the appellate court upon appeal shall use the original bill of exceptions as part of such transcript, retaining a copy in his files."

The errors complained of in the motion for a new trial which was filed on the petitioner's behalf were of such character that they could not be properly presented to an appellate court upon the technical record alone. A bill of exceptions was

necessary to preserve the testimony and proceedings dehors the technical record.

Although, as the Court finds from the preponderance of the evidence, the petitioner requested his court-appointed counsel to perfect an appeal and expected that this would be done, they made a decision against it and thus deprived the petitioner of an absolute right to an appellate review. Unless an extension was obtained, a bill of exceptions had to be filed within thirty days from the order overruling the motion for a new trial which was entered on February 27, 1960. This crucial thirty-day period was allowed to expire without any of the necessary procedural steps being taken to confer effective appellate jurisdiction upon the state Supreme Court. Since the bill of exceptions was not filed within such thirty-day period and no extension of time was obtained within that time, the petitioner's right to have his conviction reviewed both on the technical record and on the transcript of the evidence at the trial was effectively foreclosed and frustrated. While at any time within two years the technical record could have been filed in the Supreme Court for review, such review would have been extremely limited and would not have reached the alleged errors at the trial of which the petitioner complained.

If the attorneys had communicated their decision not to appeal to the petitioner within the thirty-day period, he could have taken further steps to protect himself, either to have the court appoint other counsel, or to request the court itself to order the bill of exceptions and to direct that it be timely filed. By allowing the thirty-day period to expire and leaving the petitioner under the impression that necessary steps were being pursued for an appeal, the attorneys appointed by the court, for all practical purposes, deprived the petitioner of his unconditional and absolute right of appeal under state law.

The discriminatory interference by the state through one of its officials, agents or officers with a statutory right of appeal has been held by the Supreme Court to be a violation of the equal protection clause of the Fourteenth Amendment. Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453; Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215. In the Cochran case the petitioner for habeas corpus alleged that his efforts to perfect a statutory appeal from his criminal conviction were frustrated because the prison officials, following prison rules, had suppressed his appeal documents. The Court, in reversing a judgment of the Supreme Court of Kansas, 153 Kan. 777, 113 P.2d 1048, dismissing the petition for habeas corpus, stated:

> "The State properly concedes that if the alleged facts pertaining to suppression of Cochran's appeal 'were disclosed as being true before the supreme court of Kansas, there would be no question but that there was a violation of the equal protection clause of the Fourteenth Amendment.'" (316 U.S. at pp. 257–258, 62 S.Ct. at pp. 1069–1070.)

In Dowd v. United States ex rel. Cook, supra, the district court found in a habeas corpus proceeding that the prisoner, within the six months allowed for an appeal of his conviction as of right under Indiana law, prepared proper appeal papers but that his efforts to file the documents in the state supreme court were frustrated by the warden, acting pursuant to prison rules. In affirming the district court's finding that the prisoner had thus been denied the equal protection of the law under the Fourteenth Amendment, the Supreme Court, citing its opinion in the Cochran case, said:

> "In this Court the State admits, as it must, that a discriminatory denial of the statutory right of appeal is a violation of the Equal Protection Clause of the Fourteenth Amendment." (340 U.S. at p. 208, 71 S.Ct. at p. 263.)

That the prison officials in the Cochran and Dowd cases were acting pursuant to prison rules would not appear to be a substantial distinguishing factor. Doubt-

less the prison officials had the authority under state law to promulgate reasonable rules of conduct and discipline in state prison institutions, but there is nothing in either opinion to show that they were given specific statutory authority to adopt rules which would permit them to frustrate the efforts of a prisoner to perfect an absolute right of appeal conferred by state law. The result in both cases was that the right of appeal was denied to a prisoner by arbitrary conduct of state officials. Such, in essence and effect, is the situation here. The official court reporter appointed by the court, clearly a state agent for present purposes, and mandatorily required by state law to transcribe such proceedings and deliver copies thereof to court-appointed attorneys failed to perform that duty. This failure alone, for all practical purposes, frustrated the petitioner's statutory right of appeal. Other steps required to accomplish a timely appeal were not taken, either by the attorneys appointed to represent the petitioner or by any state official, even though the petitioner was led to believe that he would be protected in this respect and would receive the benefits of an appellate review of his conviction. Moreover, the decision of the attorneys not to appeal, contrary to the wishes of petitioner, coupled with their failure to so advise the petitioner, even conceding that there was no lack of good intent, amounted to an actual deception, just as effectively depriving him of his right to appeal as did the suppression of documents by prison wardens in the Cochran and Dowd cases.

Decisions of the Supreme Court have clearly settled the proposition that a state, having an appellate system in criminal cases, is constitutionally required to provide means of affording adequate and effective review to indigent defendants, to the end that they may be placed upon a basis of equality in this respect with nonindigents.. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. More recent decisions are to the same effect. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, holding that

denial to an indigent defendant of counsel on appeal from his criminal conviction was a discrimination between the rich and the poor which violates the Fourteenth Amendment; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892, holding that an indigent defendant was denied equal protection of the law under a state statute permitting the Public Defender to refuse a transcript of the record for an appeal if in his opinion the appeal would not be effective; and Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899, holding that there was an unconstitutional discrimination against an indigent defendant by a state rule permitting the trial judge to deny a free transcript. The undeniable teaching of these cases is that indigent defendants in criminal cases must be accorded substantially the same opportunities to have an effective appeal as nonindigents.

As a part of its system of appellate review to protect indigent defendants Tennessee has placed definite responsibilities in capital cases upon the trial judge, the official court reporter, the clerk, and upon court-appointed counsel to take the necessary procedural steps to effectuate an appeal. The clear meaning of the controlling statutes is that the duty of court-appointed counsel in such cases does not end with the filing of a new trial motion but continues at least to the point that they are required to file a timely bill of exceptions to the end that the right of an appellate review may not be lost. The same statute further provides that in the event of an appeal court-appointed counsel shall be entitled to receive from the state mileage at a prescribed rate from the town of his residence to the point where the Supreme Court shall sit. T.C.A. § 40-2013. Thus, court-appointed counsel in such cases in a very real sense constitute a part of the system whereby the state in capital cases seeks to protect the indigent defendant with respect to an appellate review of his conviction. Having in these cases specific statutory duties to perform in connection with an appeal not imposed upon attorneys generally, any default on their part in this respect must be at-

tributed to the state in testing the application of the Fourteenth Amendment.

█ █ It needs no argument to demonstrate that under our present-day conception the right of appeal, while perhaps not an indispensable ingredient of due process of law, is nevertheless a valuable and substantial right, certainly so in a capital case or in a case where a long term of imprisonment has been imposed. Conceding that a state may not be constitutionally required to provide a system of appellate review, if it elects to do so its benefits must be made available on a basis of substantial equality to all alike, including those with and those without funds. Considering the particular facts of the present case, the Court is persuaded that the petitioner was denied the equal protection of the law in violation of the Fourteenth Amendment as construed by our highest court.

Since the Court is of the opinion that the petitioner's conviction was rendered void by reason of the denial of his right to an appeal, it is unnecessary to pass upon the alternative contention that his conviction was invalidated because he was required to undergo trial while handcuffed and closely guarded by a number of armed officers. An early Tennessee decision held that it is discretionary with the trial judge to require that a prisoner be manacled during his trial to prevent escape and that such discretion will not be "revised" by an appellate court except in a clear case of abuse. Poe v. State, 78 Tenn. 673 (1882). The Court can only observe that such a requirement, reminiscent of medieval times, places a defendant at a serious if not insuperable disadvantage in obtaining a fair and impartial consideration of his case by the jury.

█ As the Court is of the view that the petitioner was unconstitutionally deprived of his right of appeal, the question arises as to the appropriate order to be entered by this Court. If there were any way under state law that an appellate review could be provided, it would appear that the proper order would be to direct that the petitioner be released from custody unless he is provided with an appeal

within a reasonable time. Such a disposition of the case, however, would be tantamount to a direction for the unconditional release of the petitioner, since it is clear under existing state statutes that there is no way at this time that the Supreme Court could obtain jurisdiction to review the petitioner's conviction. The object of an appeal in the petitioner's case, of course, was to obtain a reversal of his conviction and a new trial. No error was assigned in his motion for a new trial which went to the validity of the indictment, to the jurisdiction of the trial court, or which, if sustained, would have resulted in a dismissal of the proceedings against him rather than in a retrial of his case. This being true, the Court is of the opinion that the proper course to be taken by this Court is to award the petitioner the maximum relief that he could have obtained if his appeal had been properly perfected and he had been successful in prosecuting it. This can be accomplished by directing that the petitioner be accorded a new trial, if the state desires to retry him for the offense charged in the first count of the indictment, and otherwise that he be released from custody. Such a disposition will vindicate the petitioner's constitutional rights and operate to correct the constitutional error committed against him. As pointed out in Dowd v. United States ex rel. Cook, supra, "[t]he District Court has power in a habeas corpus proceeding to 'dispose of the matter as law and justice require.' 28 U.S.C., § 2243."

It is therefore directed that an order be submitted to the Court adjudging that the petitioner, Boyd Coffman, be released from the further custody of the respondent, Lynn Bomar, Warden of the Tennessee State Penitentiary at Nashville, and delivered to the custody of the Sheriff and District Attorney-General for Washington County, Tennessee, if said state officials intend to retry petitioner for the offense out of which the instant proceeding arose. In the event the said state officials do not so intend to retry the petitioner for said offense, it is directed that he be released from further custody forthwith.