**Anthony Mature GALLOWAY, Petitioner,**

v.

**L. V. STEPHENSON et al., Respondents.**

**No. C–80–231–G.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

March 25, 1981.

Anthony Mature Galloway, pro se.

Thomas J. Ziko, Associate Atty. Gen. of North Carolina, Raleigh, N. C., for respondents.

## JUDGMENT

HIRAM H. WARD, District Judge.

On February 19, 1981, the United States Magistrate's Findings and Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. No response has been received by the Court within the time limits prescribed by Section 636.

The Court hereby accepts the Findings and Recommendation which it adopts as its own.

IT IS THEREFORE ORDERED AND ADJUDGED that the writ of habeas corpus issue and that petitioner's judgment and conviction in the case of *State v. Galloway*, 75 CR 4303, in Rockingham County, North Carolina, be vacated and set aside and petitioner be released from custody, unless within 60 days petitioner has been afforded a right to direct review of his conviction by the North Carolina appellate courts, or unless petitioner's conviction is vacated and he is given the right to a retrial, released or agrees to some other disposition.

IT IS FURTHER ORDERED that, within 10 days after the expiration of the 60-day period, the parties shall inform the Court as to whether there has been compliance with its orders.

## MAGISTRATE'S FINDINGS AND RECOMMENDATION

Feb. 19, 1981.

RUSSELL A. ELIASON, United States Magistrate.

Petitioner, a prisoner of the state of North Carolina, seeks relief pursuant to 28 U.S.C. § 2254. In 1975, petitioner was charged with armed robbery and burglary. The jury found petitioner guilty of armed robbery but not of burglary. He was sentenced to 30 years' imprisonment.

On December 10, 1975, petitioner gave notice of appeal and counsel was appointed to represent him. He was given 60 days to prepare and serve the case on appeal. On February 15, 1976, petitioner, upon motion of counsel, was given up to 150 days to complete his appeal. Petitioner's counsel did not file his appeal within that time limit, thus on June 18, 1976, the prosecution moved, pursuant to N.C.Gen.Stat. § 287.1

(repealed), to dismiss the appeal for failure to perfect it within the time allotted. On that same day, the motion was granted and the appeal was dismissed.

On June 22, 1976, petitioner's counsel filed a handwritten petition for a writ of certiorari. Therein, he stated that, on June 18, 1976, a motion dismissing the appeal was granted but that he had not been advised of the motion nor had he been present at its presentation. He further stated that the appeal had been prepared and that there were two assignments of error contained in the record on appeal. He asked that the assignments of error be considered in the interests of justice. The North Carolina Court of Appeals denied petitioner any relief. Thereafter, petitioner drafted several pro se motions for post-conviction relief. The state admits that all the contentions presented in the instant petition were presented to the state courts and that petitioner has exhausted his state court remedies.

In the instant case, petitioner claims that his constitutional rights were violated because he was denied his right to appeal, he received ineffective assistance of counsel with respect to the appeal, and the motion to dismiss granted by the state judge was illegal since it was based upon a repealed statute.

The state filed an answer and a motion to dismiss. It urges that relief be denied claiming petitioner was not unconstitutionally deprived of his right to appeal because he has no constitutional right to such, and, even though N.C.Gen.Stat. § 1–287.1 had been repealed, Rule 12 of the North Carolina Rules of Appellate Procedure permitted the same result. With respect to the charge of ineffective assistance of counsel, the state, while not vouching for the actions of the attorney, urges that no relief should be given since the two errors raised by his attorney in the Record on Appeal would not entitle petitioner to relief under state law and therefore petitioner allegedly has suffered no prejudice.

 Contrary to respondent's contentions, the recited facts show that petitioner was deprived of his constitutional right to his first direct appeal.[1] It will be assumed, without deciding, that petitioner's claim was properly dismissed. (*But see* n.1, *supra.*) The state contends that petitioner has no right to a direct appeal. The contention is inaccurate. The law is that, while the state has no duty to provide for appellate review of criminal convictions, when it does, it must assure indigent defendants an adequate opportunity to present their claims. *Ross v. Moffitt*, 417 U.S. 600, 607, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

1. Because of the ultimate decision that petitioner was denied his constitutional right to a direct appeal, the Court need not concern itself with the subsidiary claim with respect to the statutory contentions. However, it may be noted that in that regard there is some question as to the procedure employed here. The state is correct in indicating that Rule 12 of the North Carolina Rules of Appellate Procedure replaced N.C.Gen.Stat. § 1–287.1 and still required petitioner to file the Record on Appeal no later than 150 days after giving notice of appeal. Furthermore, pursuant to Rule 27 of the North Carolina Rules of Appellate Procedure, the trial court could not grant an extension of time greater than 150 days from the taking of the appeal. Thereafter, all motions had to be made in the Court of Appeals. Furthermore, pursuant to Rule 25, North Carolina Rules of Appellate Procedure, the trial court in this case had jurisdiction to dismiss the appeal since it had not yet been docketed in the appellate court. However, Rule 25 also required the motion to dismiss to be supported by affidavits or certified copies of docket entries and further required that all motions made to a trial court had to be in compliance with the North Carolina Rules of Civil Procedure.

In his handwritten petition for certiorari, filed with the state court, petitioner's counsel stated that he never received a copy of the motion to dismiss nor was he present in court. Rather, it appears that the motion was granted ex parte. Thus, some doubt does arise as to whether petitioner's appeal was properly dismissed pursuant to North Carolina state law and procedure. To the extent that these facts show that counsel, while dilatory, did not act incompetently because he was never given notice concerning the dismissal, they only serve to support petitioner's first ground for relief that he was improperly denied his right to a direct appeal. Because in either event petitioner would be entitled to relief, this Court need not further develop and resolve this issue.

In 1977, the Supreme Court decided two cases which govern the decision to be made here. First, in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), court-appointed counsel concluded that the appeal would be without merit. He advised the state court of this fact and also informed it that defendant wanted to file a brief. The court denied defendant's request for another attorney. The defendant filed a pro se brief and the court, after examining the record, affirmed the conviction. The Supreme Court found that the defendant's right to assistance of counsel had not been adequately met. It concluded that: "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client ...." 386 U.S. at 744, 87 S.Ct. at 1400.[2]

On the same day, the Supreme Court decided *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967). There, court-appointed counsel filed notice of appeal. Apparently believing the appeal was without merit, counsel failed to file the entire trial record. Even though the state supreme court had directed the case to be submitted on the full record, briefs, and arguments of counsel, it considered the appeal on the basis of the clerk's transcript, which under Iowa law merely included the pleadings and filings but not the transcript of evidence. The state court found no error. The Supreme Court held the procedure defective because defendant was precluded from obtaining a complete and effective appellate review of his conviction. It noted that the state court procedure automatically deprived him of a review of the evidentiary record, based on briefs and argu-

ments. It concluded by referring to *Anders v. California, supra,* with respect to the responsibilities incumbent on both the appellate court and appointed counsel to ensure a complete appeal.

In the instant case, petitioner did not receive adequate assistance of counsel in the presentation of his appeal. Both the concepts of "substantial equality and fair process" (*Anders,* 386 U.S. at 744, 87 S.Ct. at 1400), derived from the Fourteenth Amendment, and the more specific right to assistance of counsel contained in the Sixth Amendment, demand competent appellate representation from counsel. *Passmore v. Estelle,* 607 F.2d 662, 663 (5th Cir. 1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980). In *Passmore,* the court found counsel's one-sentence brief inadequate, even though the state appellate court had said it reviewed the record. In *Cantrell v. State of Ala.,* 546 F.2d 652 (5th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977), appellate counsel did not provide effective representation when the original appeal was dismissed because of counsel's failure to have the trial transcript certified as required by state procedure. In the instant case, counsel's failure to timely file the Record on Appeal likewise amounts to inadequate assistance of counsel. The loss of one's only direct appeal because of counsel's neglect constitutes a far more serious deprivation than the truncated reviews disapproved in *Anders* and *Entsminger.*

When counsel unnecessarily jeopardizes petitioner's right to an appeal, it is incumbent on the state courts to take prophylactic action to prevent forfeiture of the appeal.[3] No good reason exists to penalize

---

2. The Court set down the rules to be followed where counsel feels an appeal is without merit. It required counsel to advise the appellate court of his decision that the appeal was frivolous and to file a request to withdraw. However, the request had to be accompanied by a brief raising any matters of arguable merit. The defendant was to be given a copy of the brief and time to raise any points which he felt were of merit. Thereafter, the appellate court had the duty to fully examine all the proceedings to

determine whether the case was wholly frivolous. If so, counsel's request to withdraw could be granted and the appeal dismissed. If, however, there were any legal points of arguable merit, the appellate court was required to provide defendant with the assistance of counsel and to proceed with the appeal.

3. As the court said in *Passmore v. Estelle,* 607 F.2d 662, 664 (5th Cir. 1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980), if counsel submits an insufficient brief, the ap-

petitioner for his counsel's failure. Upon discovering a dereliction of duty by counsel, the state court would have been better advised to have disciplined counsel rather than visit the retribution on petitioner. As pointed out in *Flanagan v. Henderson*, 496 F.2d 1274, 1278 (5th Cir. 1974), where counsel's error limited the appeal to one based on the minute entries of the trial court clerk,

> [w]hen a court discovers that an attorney has been derelict in the performance of a court duty which could forfeit a legal right accorded to a defendant in a criminal case is [*sic*] significant as the right to an appeal on the merits, disciplinary measures against the attorney—rather than deprivation of the defendant's rights—may be the only constitutional remedy. At least that is true in this case.

Even though petitioner was denied an effective and complete appellate review, the state still argues that no relief should issue because the two assignments of errors contained in the Record of Appeal (prepared but not filed by the attorney) would not support relief under state law. In essence, the state contends that any error was harmless inasmuch as petitioner suffered no prejudice from the loss of his appeal. The contention does not bear up under scrutiny.

■ When a defendant has been deprived of his right to a complete and effective appeal, he need not demonstrate that he was prejudiced or that he has arguable grounds for a successful appeal.[4] Thus, in determining whether petitioner's constitu-

tional rights have been violated, the federal court should not examine the merits of the issues to be raised in a belated appeal. In *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), the Court first applied this rule in a 28 U.S.C. § 2255 proceeding. It expressly disapproved the use of a harmless error principle saying that there was no reason to add an additional hurdle to those whose initial right to appeal had been frustrated. The *Rodriquez* decision and reasoning applies to state prisoners such as petitioner. *Riser v. Craven*, 501 F.2d 381 (9th Cir. 1974), *followed in Miller v. McCarthy*, 607 F.2d 854, 857 (9th Cir. 1979); *Wilbur v. State of Maine*, 421 F.2d 1327 (1st Cir. 1970); *United States ex rel. Williams v. LaVallee*, 487 F.2d 1006, 1010 (2d Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). This rule has particular applicability to federal court review of state court convictions since principles of comity discourage federal court intrusion into matters more appropriately left to the expertise of the state courts. *United States ex rel. Randazzo v. Follette*, 444 F.2d 625, 628 (2d Cir.), *cert. denied sub nom., Zelker v. Randazzo*, 404 U.S. 916, 91 S.Ct. 1672, 29 L.Ed.2d 150 (1971).

■ Having determined that petitioner was unconstitutionally denied his right to a complete and effective appeal, the next question concerns the remedy. Case law has not been uniform and a petitioner has often been given a belated appeal, a new trial, or his release, or a combination there-

pellate court could and should require re-briefing. This advice predicted the outcome in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), which held that, by virtue of conducting criminal trials, the state obliges itself to ensure adequate representation of counsel, even for those who retain their own attorney. This derives from the state's obligation to provide a fundamentally fair proceeding for its trials. The same is true with respect to appeals. As warned in *Entsminger v. Iowa*, 386 U.S. 748, 752, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967), both the appellate court and counsel share in the responsibility to provide complete and effective appellate review.

4. This situation may be distinguished from the one where the claim is that counsel neglected to raise certain issues on appeal. In that instance, the defendant must at least show that the issues enjoy an arguable chance of success on their merits. *Thor v. United States*, 574 F.2d 215, 221 (5th Cir. 1978). Concern over which issues should be raised on appeal usually amounts to second-guessing counsel's strategy. No fundamental rights are involved until it is determined that the omitted issue was of sufficient import to cast doubt on the fundamental fairness of the proceeding. However, when the right to appeal itself is lost, the fairness of the proceeding is immediately impugned, without any further showing of harm being necessary.

of.[5] However, guidance in fashioning the appropriate relief may be obtained by employing the principle that, in determining the relief, the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, —— U.S. ——, ——, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). When a petitioner has been unconstitutionally denied his appeal, the deficit may be fully rectified should the state grant a belated appeal. Nothing more is necessary to correct the constitutional violation. Should the state be unable to secure petitioner a belated appeal, it could, nevertheless, also correct the violation by vacating the conviction and granting petitioner another trial and appeal. In most instances, the purpose of the belated appeal will be to obtain a new trial. Because that is the maximum relief normally obtained from a belated appeal, the new trial is a more than complete remedy for the initial deprivation of the loss of the appeal. *Coffman v. Bomar*, 220 F.Supp. 343, 349 (M.D.Tenn.1963). In fact, it provides petitioner another chance to persuade the judge or jury that he is not guilty. Of course, nothing prevents the state from giving petitioner the ultimate relief of vacating the conviction and releasing him, or perhaps offering him a plea with a sentence of time served, for example.

 In recounting these options, it clearly appears that there is more than one acceptable solution available for correcting the constitutional violation which has deprived petitioner of his appeal. Proper respect for comity in federal-state relations counsels against a federal court imposing its own detailed solution upon the state court. *Mitchell v. Salisbury*, 443 F.2d 324 (6th Cir. 1971). The danger in a federal court's offering its preferred option is that the state court may not be able to comply, due to peculiarities of its law, thereby unnecessarily converting the federal court order into a mandate for petitioner's release. *Coffman v. Bomar, supra* at 349. Therefore, in ordering relief, the federal court is better advised to enter a general order, giving the state its option of remedies, leaving the particular solution to the state court, as may be consistent with its law and procedure.

Should the state choose the retrial option, one word of warning is in order. While normally a successful appeal will only result in a retrial, that is not always the case. In *Coffman v. Bomar, supra*, the court expressed concern should the petitioner claim that, if he had received an appeal or belated appeal of his conviction, he could have proved the indictment was invalid, the state court lacked jurisdiction or other grounds which would have resulted in the charges being dismissed. In that situation, the grant of a retrial, rather than a belated appeal, could well implicate petitioner's rights to due process or to be safe from double jeopardy. *See generally Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Therefore, before proceeding with a new trial, the state would have to provide petitioner and his counsel with the opportunity to explore and raise this issue.

 This case presents no issue concerning whether the retrial option is not a permissible remedy. Petitioner has not raised the matter in the instant petition,

---

**5.** In some cases, the courts have allowed a belated appeal, but if no trial transcript is in existence then a new trial. *Willey v. Coiner*, 464 F.2d 525 (4th Cir. 1972); *Turner v. State of North Carolina*, 412 F.2d 486 (4th Cir. 1969); *Cline v. Beto*, 418 F.2d 549 (5th Cir. 1969). However, other courts have only permitted an out-of-time appeal. *Passmore v. Estelle, supra; Williams v. Coiner*, 392 F.2d 210 (4th Cir. 1968); *Puckett v. State of North Carolina*, 343 F.2d 452 (4th Cir. 1965). In *Byrd v. Smith*, 407 F.2d 363 (5th Cir. 1969), the court vacated the lower court's retrial option and only allowed a belated appeal. On the other hand, the courts have sometimes allowed an out-of-time appeal or a retrial without restriction. *Nelson v. Peyton*, 415 F.2d 1154 (4th Cir. 1969), *cert. denied sub nom., Cox v. Nelson*, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); *Pressley v. Wainwright*, 540 F.2d 818 (5th Cir. 1976), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977); *Lumpkin v. Smith*, 439 F.2d 1084 (5th Cir. 1971).

but more importantly there is no indication that he has exhausted his remedies by presenting the issue to the state court. When state court remedies have not been exhausted, absent special circumstances, a federal habeas court may not retain the case on its docket, pending exhaustion, but should dismiss the petition. *Slayton v. Smith*, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971). More to the point, a federal habeas court may not issue a conditional writ permitting a retrial and then retain the case on its docket for further supervision. As stated in *Pitchess v. Davis*, 421 U.S. 482, 490, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975):

> Neither Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court.

■ Therefore, should petitioner be granted relief in the form of a new trial, he must first present any issue of prejudice to the state courts and exhaust his remedies there. Nothing in the record clearly forecloses the retrial option and, since the issue has not been presented to the state courts, any decision by this Court would be premature.[6] Therefore, the state should be given the full range of options previously mentioned in order 'that it may correct the constitutional violation found here.

IT IS THEREFORE RECOMMENDED that the writ of habeas corpus issue and that petitioner's judgment and conviction in the case of *State v. Galloway*, 75 CR 4303, in Rockingham County, North Carolina, be vacated and set aside and petitioner be re-

leased from custody, unless within 60 days petitioner has been afforded a right to direct review of his conviction by the North Carolina appellate courts, or unless petitioner's conviction is vacated and he is given the right to a retrial, released or agrees to some other disposition.

IT IS FURTHER RECOMMENDED that, within 10 days after the expiration of the 60-day period, the parties shall inform the Court as to whether there has been compliance with its orders.

---

**6.** Even though petitioner would have to exhaust his state court remedies, should he claim a retrial would expose him to double jeopardy, he would not necessarily be foreclosed from returning to this Court in advance of the trial. In *Gully v. Kunzman*, 592 F.2d 283 (6th Cir.), *cert. denied*, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979), the court held that, unlike other claims, a double jeopardy defense may be heard by a federal habeas court prior to the trial of the matter. It reasoned that the hazard protected against was not just the conviction but the imposition of a trial. Therefore, in

order to effectuate the double jeopardy clause, review can be permitted before exposure to the violation. Nevertheless, the court still required that the petitioner first utilize whatever state procedures were available to him. In that case, it found sufficient the petitioner's presentation of the claim to the trial court and a subsequent filing in the state supreme court for a writ of mandamus or an order of prohibition. *See also Gleberman v. Trusty*, 487 F.Supp. 913 (E.D.Ky. 1980)—(petition dismissed for failure to seek writ of prohibition).