John Barry McLENDON, Petitioner,

v.

James C. WOODARD, Rae H. McNamara and the State of North Carolina, Respondents.

No. C–C–83–099–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 23, 1989.

Charles Johnson, George R. Hodges, Moore, Van Allen & Allen, Charlotte, N.C., for petitioner.

Barry S. McNeill, Office of N.C. Atty. Gen., Raleigh, N.C., for respondents.

## MEMORANDUM OF DECISION

McMILLAN, Judge.

### INTRODUCTION

Through a tortuous procedural history, recounted below, the court must decide one issue: Is the appeal of a state court criminal conviction rendered meaningless because portions of the trial transcript are unavailable?

### PROCEDURAL HISTORY

Petitioner was tried on a charge of robbery with a dangerous weapon during the April 23, 1979, session of the Anson County, North Carolina, Superior Court. He entered a plea of not guilty. At trial, the state offered the testimony of the victim, Floyd Ratliff, three law enforcement officers, and a codefendant, Eugene Allen. Petitioner did not offer evidence.

The state's evidence tended to show that three men, petitioner, Allen and Willie Winnegan, entered Ratliff's general store on January 29, 1979. Petitioner struck Ratliff from behind with a stick. Ratliff fell to the floor, covered his head with his hands, and was hit again. Ratliff, who was 68 years old, sustained a five inch gash in his skull that required 62 stitches, and a broken bone in his hand. The men emptied the cash register and took money from Ratliff's hip pocket. Ratliff saw them drive away in a blue Plymouth automobile. He testified that the cash register had contained more than $350.00, a paper with some figures written on it, and a $5.00 check written by Olin Johnson.

Approximately an hour later, a South Carolina law enforcement officer spotted a blue Plymouth occupied by petitioner, Allen and Winnegan stopped at a store about ten miles from Ratliff's. The officer had received information concerning the robbery and a description of the suspects. When he approached the three men, they drove away. Several officers pursued the suspects at high speeds. After stopping the three men, the officers searched the car and found a paper bag containing more than $300.00, a paper with figures written on it, and a $5.00 check written by Olin Johnson. Those items, and a large wooden stick, were found under the seat in which the petitioner had been sitting.

The jury returned a verdict of guilty. On April 25, 1979, petitioner was sentenced to thirty years in prison. Under the sentence structure then in effect, petitioner would have been eligible for parole in seven years. Petitioner gave notice of appeal in court, but the appeal was not perfected.

On July 11, 1979, petitioner filed a motion for a trial transcript *in forma pauperis* in the Anson County Superior Court. His request was denied on August 27, 1979. The court concluded that the state was not required to give petitioner a transcript because the time to appeal had expired, and that petitioner had not shown a sufficiently particularized need to justify the expense of providing a transcript.

On March 26, 1982, petitioner filed a motion for appropriate relief in the Anson County Superior Court. Petitioner alleged three grounds for relief, including that he had been denied due process by not being allowed an appeal. This motion was denied on May 20, 1982. Petitioner petitioned the North Carolina Court of Appeals for a writ of certiorari, alleging the same grounds for relief that he had filed in Superior Court. The Court of Appeals denied certiorari on August 27, 1982. Under N.C. Gen.Stat. § 7A–28(a), the decision of the Court of Appeals was not subject to further review by the North Carolina Supreme Court.

Petitioner filed a petition for writ of habeas corpus in this court on February 16, 1983. The court appointed counsel for petitioner on June 14, 1985. On September 17, 1985, the court held an evidentiary hearing on petitioner's application. The hearing primarily focused on petitioner's claim that he had been denied effective assistance of counsel because his trial counsel had failed

to perfect an appeal. The court found that petitioner's trial counsel had not perfected an appeal nor told the petitioner of the need to perfect an appeal in order to preserve it. At the hearing the court also discovered that the complete transcript of petitioner's criminal trial had not been furnished to petitioner or the court.

On October 30, 1985, the court granted the writ of habeas corpus and ordered that "the petitioner be released from custody without bond pending the final decision of any appeal which may be taken from this order." Petitioner was released from custody on November 9, 1985.

According to respondents, they "elected against appealing this Court's decision to the United States Court of Appeals for the Fourth Circuit." Docket # 20 at 2. Instead, on December 16, 1985, the state filed a petition for writ of certiorari in the North Carolina Court of Appeals, seeking a belated appeal of petitioner's 1979 conviction. On January 10, 1986, the North Carolina Court of Appeals granted the writ of certiorari.

On January 21, 1986, respondents moved pursuant to Fed.R.Civ.P. 60(b) for relief from the judgment and order of October 30, 1985. Citing *Galloway v. Stephenson,* 510 F.Supp. 840, 845 (M.D.N.C.1981), respondents argued that the constitutional violation had been remedied by securing a belated appeal for petitioner; therefore, the court should relieve respondents from the part of the October 30 order directing petitioner's release.

On January 21, 1986, petitioner moved pursuant to Fed.R.Civ.P. 60(b) for relief from the judgment and order of October 30, 1985. Citing the inadequacies of the trial transcript, petitioner argued that he could not effectively appeal his conviction; therefore, the court should amend the October 30 order to find that a belated appeal would not cure the denial of effective assistance of counsel.

On February 11, 1986, the court directed the state to indicate what portions of the record were missing and what efforts had been made to locate them. The court ordered that "[p]etitioner is to remain at liberty pending further order of court."

On February 19, 1986, the state responded that the trial transcript did not include opening and closing statements, the jury instructions and the sentencing hearing. A record of these parts of the trial was unavailable because the court reporter had retired as of January 1, 1985, and discarded her notes of petitioner's trial.

On April 14, 1986, the court heard the parties' motions for relief from judgment. Both motions were denied at the hearing.

On February 17, 1987, the North Carolina Court of Appeals affirmed petitioner's conviction. *State v. McLendon,* 84 N.C. App. 458, 353 S.E.2d 274 (1987). Petitioner argued to the Court of Appeals that the incomplete trial transcript made an effective appeal impossible. The court disagreed. The court stressed that petitioner had not presented any assignments of error arising from the missing portions of the transcript, and that petitioner had the burden to demonstrate prejudicial error. Also, the court heavily relied on the "presumption of regularity" in judicial proceedings and on affidavits from the trial judge and trial attorneys to decide that "there is simply no suggestion that any error prejudicial to defendant occurred at any state of his trial for which a transcript is not available."

On March 2, 1987, petitioner filed a notice of appeal and an alternative petition for discretionary review in the North Carolina Supreme Court. The state moved to dismiss petitioner's appeal. On May 5, 1987, the North Carolina Supreme Court denied the petition for discretionary review and granted the state's motion to dismiss the appeal. *State v. McLendon,* 319 N.C. 462, 356 S.E.2d 11 (1987). This exhausted petitioner's state court remedies.

On July 13, 1987, respondents refiled their motion for relief from judgment. Again citing *Galloway,* respondents argue that the belated appeal remedied the constitutional violation found by this court. Because petitioner's conviction has been affirmed on appeal, the state seeks to rein-

carcerate him so that he may serve the remainder of his sentence.

On July 30, 1987, petitioner refiled his motion for relief from judgment. Again citing the deficiencies in the trial transcript, petitioner argues that his belated appeal was meaningless. Because the state cannot provide him with a meaningful appeal, petitioner asks the court to vacate his 1979 conviction.

## DISCUSSION

A state prisoner is entitled to relief under 28 U.S.C. § 2254 "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As no federal law or treaty is at issue, the court must determine whether the incomplete trial transcript made petitioner's appeal meaningless as a matter of constitutional law.

The court will analyze the claim under the "cause-and-prejudice" standard first announced in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In a series of cases, the Supreme Court has developed the rule that "when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice." *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Since its appearance in *Davis*, the cause-and-prejudice standard has been "incorporated directly into the body of law governing the availability of federal habeas corpus review." *Wainwright v. Sykes*, 433 U.S. 72, 85, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977).

"Cause" and "actual prejudice" are flexible concepts that should be used to relieve "victims of a fundamental miscarriage of justice." *See Engle*, 456 U.S. at 135, 102 S.Ct. at 1576. In North Carolina, criminal appeals are decided solely on the record. N.C.R.App.P. 9. In addition, while petitioner's trial transcript claim was raised on appeal, the North Carolina Court of Appeals did not decide the issue with respect to constitutional law. For these reasons, petitioner's motion presents sufficient cause to be considered by this court.

 The burden is on petitioner to show that he was prejudiced by the alleged constitutional error. He must show that there was *actual* prejudice, not just the *possibility* of prejudice. *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). Petitioner does not allege any error in the trial proceedings. He alleges that the abbreviated transcript itself did not allow him a meaningful appeal. This allegation depends on the *possibility* of prejudice. Therefore, petitioner has not met the burden of showing actual prejudice. Because "[m]ere absence of a perfect transcript does not necessarily deny one due process of law," *Mitchell v. Wyrick*, 698 F.2d 940, 941 (8th Cir.), *cert. denied*, 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983), the court finds no "fundamental miscarriage of justice" in petitioner's belated appeal.

Other courts, following an approach similar to the cause-and-prejudice standard, have held that state court prisoners have a right to a transcript that is complete only for those parts of the trial in which error is assigned. *See Schwander v. Blackburn*, 750 F.2d 494 (5th Cir.1985); *Sheffield v. Curran*, 645 F.Supp. 859 (D.Mass.1986). Where there is no error claimed in any part of the trial not transcribed, "the loss of portions of petitioner's transcript did not violate his constitutional rights." *Sheffield*, 645 F.Supp. at 863.

The Supreme Court has stated that "a 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971). The state must show that an incomplete transcript is adequate only where the petitioner "make[s] out a colorable need for a complete transcript." *Id.* at 195, 92 S.Ct. at 415. Petitioner has failed to establish the need for a complete transcript.

 It is unfortunate that the court reporter retired and discarded her records before petitioner's appeal. A line of cases beginning with *Norvell v. Illinois*, 373 U.S.

420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), addresses such twists of fate. In *Norvell,* the Court held that:

> When ... transcripts of criminal trials are no longer available ... some practical accommodation must be made. We repeat what was said in *Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69–70, [33 S.Ct. 441, 443, 57 L.Ed. 730 (1913)]: 'The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific.... What is best is not always discernible; the wisdom of any choice may be disputed or condemned.' The 'rough accommodations' made by government do not violate [the Constitution] unless the lines drawn are 'hostile' or 'invidious.'

373 U.S. at 424, 83 S.Ct. at 1369. Petitioner's belated appeal is a "rough accommodation," but there is no sign of any hostility or invidiousness in the state's actions. Had petitioner's privately-retained trial counsel perfected an appeal in 1979, a complete transcript could have been obtained. The state was not responsible for that mistake. The fact that the court reporter unwittingly destroyed her records six years later does not by itself rise to the level of a constitutional violation. "[T]he State ... is not required to perform the impossible. There can be no 'invidious discrimination' in denying a transcript which is not available." *United States ex. rel. McKee v. Pate,* 371 F.2d 405, 407 (7th Cir.), *cert. denied,* 389 U.S. 864, 88 S.Ct. 124, 19 L.Ed.2d 133 (1967).

In effect, petitioner claims that he is being required to "perform the impossible"; that is, to search a non-existent record for plain error. However, the search for plain error is not constitutionally guaranteed in state court appeals. With a federal conviction, a different result would be appropriate. When a criminal defendant in federal court is represented on appeal by new counsel, the absence of a substantial portion of the record, even absent a showing of specific error, is sufficient to mandate reversal. *United States v. Selva,* 559 F.2d 1303 (5th Cir.1977). This result is based on Fed.R.Crim.P. 52(b), which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," and the Court Reporter Act, 28 U.S.C. § 753(b), which states that a federal district court reporter "shall record verbatim ... all proceedings in criminal cases had in open court." Rule 52(b) and 28 U.S.C. § 753(b) do not apply to the states, and North Carolina has no equivalent rules.

The Supreme Court has specifically declined to replace the cause-and-prejudice standard with a plain-error standard in federal habeas challenges to state convictions. *Engle v. Isaac,* 456 U.S. 107, 134–35, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982). Therefore, petitioner's motion for relief, essentially based on the need for plain-error review of his complete state court transcript, is without legal support.

The writ of habeas corpus is "a bulwark against convictions that violate 'fundamental fairness.'" *Engle,* 456 U.S. at 126, 102 S.Ct. at 1571. In reaching this decision, the court has not relied on the principles of comity and finality lately ascendant in habeas analysis. "In appropriate cases those principles must yield to the imperative of correcting a fundamentally unjust incarceration.... [W]e are confident that the victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." *Id.* at 135, 102 S.Ct. at 1576.

> [t]he Court has wisely refrained from attempting to give precise content to its 'cause-and-prejudice' [standard ... It is] a matter of equitable discretion rather than a question of statutory authority; and equity has always been characterized by its flexibility and regard for the necessities of each case.

*Wainwright v. Sykes,* 433 U.S. 72, 96 & n. 4, 97 S.Ct. 2497, 2511 & n. 4, 53 L.Ed.2d 594 (1977) (Stevens, J., concurring). In another case, faced with a more compelling factual context, the court may conclude that a state court appeal is meaningless when portions of the trial transcript are unavailable.

An appropriate order will be entered.

## ORDER

For the reasons set forth in a separate memorandum of decision,

IT IS ORDERED that respondents' motion for relief from judgment is GRANTED. The order of October 30, 1985, is VACATED to the extent that it requires that petitioner be released from custody.

IT IS FURTHER ORDERED that petitioner's motion for relief from judgment is DENIED.