COMMONWEALTH vs. JOHN D. CHATMAN.

Suffolk. November 13, 1979. — July 11, 1980.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal*, Appeal, Transcript of evidence, Speedy trial, Instructions to jury.

A new trial of a criminal case was not required by the fact that a portion of the transcript, containing the testimony and argument on a pretrial motion to suppress identifications, was unavailable for purposes of appeal where the reconstruction of that portion of the transcript, undertaken after the decision of the Supreme Judicial Court in *Commonwealth* v. *Harris*, 376 Mass. 74 (1978), was sufficient to present the defendant's claims. [230-232]

A defendant who had moved to dismiss the indictments against him on the ground that he was denied his constitutional right to a speedy trial was precluded on appeal from raising a claim for dismissal under G. L. c. 277, § 72A, where it did not appear that the statutory claim had been sufficiently raised at trial. [232-235]

At a criminal trial, there was no error in the judge's charge on reasonable doubt even though it analogized to matters "of highest importance" in a juror's "everyday life." [235-236]

INDICTMENTS found and returned in the Superior Court on February 4, 1976.

The cases were tried before *Prince*, J.

*Steven J. Rappaport* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant was convicted on June 14, 1977, of unlawfully carrying a sawed-off shotgun, armed robbery, and assault and battery by means of a dangerous weapon — all arising out of an incident on December 20, 1972, at the Radio Shack on Boylston Street in Boston. Trial counsel, from the Massachusetts Defenders Committee,

filed a timely claim of appeal on June 21, 1977,[1] and transcripts of the trial and pretrial proceedings were ordered. Subsequently trial counsel was allowed to withdraw, and present counsel (appellate counsel) was appointed to prosecute the defendant's appeal on October 7, 1977. On or about January 17, 1978, copies of the transcript were delivered to the clerk and counsel; it then appeared that the transcript was incomplete. There was missing one of the stenographer's tapes from which the transcription was to be made; and consequently there were unavailable the testimony and argument on a pretrial motion to suppress identifications, the testimony of one witness and final argument on a pretrial motion to dismiss for lack of a speedy trial, the empanelling of the jury, the prosecutor's opening statement, and the testimony of the first witness at trial.

The defendant's brief in this court argued that he was entitled to a new trial because the grounds of appeal make out "a colorable need for a complete transcript." It also argued error in the judge's charge to the jury and in the denial of the defendant's motion to dismiss, in violation of G. L. c. 277, § 72A.[2] The defendant's brief further asserted that "[p]resent counsel did not represent the defendant at trial and has endeavored to reconstruct the record by contacting the trial court as well as defendant's trial counsel. However, such efforts have been to no avail."

Subsequently, the Supreme Judicial Court in *Commonwealth* v. *Harris*, 376 Mass. 74, 78-80 (1978), suggested a procedure for the reconstruction of transcripts which have become unavailable; and we stayed proceedings in this court and remanded the case to the Superior Court to provide an opportunity for reconstruction of the proceedings in that court. Accordingly, the trial judge conducted a hear-

[1] This appears from an examination of the docket entries and the original papers. Subsequently on June 27, 1977, the defendant filed a claim of appeal pro se — it is not clear why.

[2] General Laws c. 277, § 72A, was in effect at the time of the motion. It was repealed on July 1, 1979, by St. 1979, c. 344, § 42. See *Commonwealth* v. *Rodriguez*, 380 Mass. 643, 645-646 (1980).

ing for that purpose and then dictated his notes taken during the original hearings on the motions to dismiss and to suppress and during the trial.[3] These detailed notes are the major source of the reconstruction.

The defendant thereupon filed a motion for a new trial, alleging as reason therefor that "the original trial proceedings cannot be sufficiently reconstructed" and that "the grounds of appeal . . . make out a colorable need for a complete new transcript . . . ." The court denied the motion after argument by counsel, and the defendant appealed. Both parties filed additional briefs, and this appeal was argued together with the earlier appeal.

1. *Adequacy of reconstruction.* The defendant points to the missing transcript of the hearing on the defendant's motion to suppress, which attacked as unnecessarily suggestive the photographic identifications of the defendant made by two of the employees of the Radio Shack present at the robbery.[4] As put in his brief: "The defendant does not contend that the Court's findings do not support the denial of the motion to suppress. His position is simply that a full transcript of the evidence would disclose that the findings of the court were plainly wrong." We have examined the transcript of the reconstruction hearing, the trial judge's copious notes, the remainder of the trial transcript, which includes the testimony of Palmer and Officer Smith, and the array of photographs introduced at the trial.[5] We are convinced that "the trial proceedings [were] . . . reconstructed sufficiently to present the defendant's" claim based on the denial of his motion to suppress. *Commonwealth* v. *Harris,*

---

[3] Present at the reconstruction hearing were the prosecuting attorney, the defendant himself, and appellate counsel. Trial counsel was absent.

[4] At that hearing both employees, Snell and Palmer, and police Officer Smith, who initiated the identification, had testified.

[5] Twelve photographs (including that of the defendant) were introduced by the prosecution. From the trial testimony it appeared that, for various reasons, three of the fifteen photographs which had been shown to the identifying witnesses were missing. Trial counsel attempted to draw some advantage from that fact.

376 Mass. at 78. *Katz* v. *Commonwealth*, 379 Mass. 305, 313-314 (1979). *Commonwealth* v. *Reid*, 8 Mass. App. Ct. 888 (1979). The extent of the police officer's participation in the identifications is set out in detail in the judge's notes of the testimony of the three witnesses at the hearing on the motion to suppress (see note 4, *supra*). The trial testimony of Palmer and Officer Smith, which is completely transcribed, is in no way inconsistent with the judge's notes. Nor did trial counsel make any attempt to impeach them on cross-examination by indicating any contrary testimony at the hearing on the motion to suppress. Indeed at no time did he, in cross-examining either Palmer or Officer Smith, attack the identification as suggestive (see note 5, *supra*).

In light of the material in the record before us, it is hard to imagine what additional testimony the witnesses at the hearing on the motion to suppress could have given which would in any way have "disclose[d] that the findings of the court were plainly wrong." The defendant's brief does not go beyond the flat assertion. If it had any substance, trial counsel might have been expected to give it some support, for he had filed a claim of appeal and — in addition to his own recollection — may have been able to produce reports filed with the Massachusetts Defenders Committee. Yet appellate counsel failed to produce the trial counsel at the reconstruction hearing and gave no explanation for that failure. Clearly "the posture of the case was such that the defendant would be naturally expected to call" trial counsel. *Commonwealth* v. *Niziolek*, 380 Mass. 513, 519 (1980). We are therefore not impressed with the fact emphasized by appellate counsel that he himself entered the case after trial.

Nor are we impressed by his complaint that he "lacks the benefit of [the] exceptions at trial." Here again we find significant the absence of trial counsel at the reconstruction hearing.[6]

---

[6] If we assume that the stenographer numbered her exceptions in the usual way, then it is clear that there were no exceptions taken during the portion of the trial for which the transcript is missing, since the first

The defendant further contends — quoting *Charpentier* v. *Commonwealth*, 376 Mass. 80, 87-88 (1978) — that he is deprived of the opportunity of examining a complete transcript for "unnoticed errors [which] may have been committed at trial causing a 'substantial risk of a miscarriage of justice.' *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967)." Here, however, that contention seems to us to be foreclosed by the *Harris* case, read together with the *Charpentier* case. In the *Charpentier* case the court referred to that consideration in support of the requirement that an indigent criminal defendant be given a complete transcript free of charge, but pointed out that (376 Mass. at 86 n.6) "[w]here the stenographic record is unavailable through no fault of the parties, the principles of *Commonwealth* v. *Harris* . . . apply." [7] Under those circumstances — applicable to rich as well as to poor — the *Harris* case (376 Mass. at 78) holds that it is constitutionally permissible to require that an appeal be presented on a record which "can[  ] be reconstructed sufficiently to present the defendant's claims." Implicit in this formulation — at least where trial counsel is available — is the requirement that the defendant come forward with articulable claims with reference to which the reconstruction can be judged. In this case we are convinced that there are no such claims for which the reconstruction is insufficient. *Katz* v. *Commonwealth*, 379 Mass. at 313-314.

2. *Speedy trial*; *G. L. c. 277, § 72A.* The complaints relating to the incident at the Radio Shack on December 20, 1972, were issued on December 26, 1972, together with two other complaints stemming from an unrelated incident on December 21, 1972. The defendant could not be found,

---

recorded exception, which occurs during the testimony of the second witness, is numbered 1. (We also note that the stenographer was not called at the reconstruction hearing.) Contrast *Commonwealth* v. *Reid*, 8 Mass. App. Ct. 888 (1979).

[7] No argument is made that the stenographer was at fault or that, if she were, her fault as an agent of the Commonwealth could be attributed to the prosecution. We therefore do not consider that question.

and the complaint warrants were returned without service on February 20, 1973. The defendant testified that he had been arrested in Rhode Island (apparently for reasons unrelated to the 1972 incidents) on January 5, 1973, and was imprisoned there until early August, 1974, when he was returned to Boston. On August 9, 1974, the defendant appeared at the Boston Municipal Court but was not arraigned on any of the December, 1972, complaints. At that time all five complaints were endorsed: "Upon representation, defendant indicted in Superior Court, no further proceedings in this court." The defendant was then returned to the Massachusetts Correctional Institution at Concord (Concord) for a parole violation unconnected with the December, 1972, incidents. The endorsements on the complaints for the December 20 offenses were made in error arising from the indictment at that time for one of the December 21 offenses. On August 14, 1974, three new complaints were issued based on the December 20 incident. Officer Smith testified that the new complaints were lodged against the defendant in Concord. However, for some unexplained reason the defendant was released from Concord on April 1, 1975, no action having been taken on the outstanding warrants. These were eventually returned without service in June of 1977.

Upon learning in February of 1976 that the defendant had been arrested in Virginia, the Commonwealth obtained the present indictments based on the December 20 incident. But by the time the indictments were returned on February 4, 1976, the defendant had been released by the Virginia authorities.[8]

---

[8] Later that year he returned to Massachusetts; on June 4, 1976, he was charged in the Boston Municipal Court with unlawful possession of a controlled substance, and on June 16 he was given a six-month suspended sentence. The judge found that there was "no evidence as to why the Boston Police Department was not alerted to this information . . . ." On February 28, 1977, the defendant was charged in the Roxbury District Court with three motor vehicle offenses; he was subsequently defaulted on those charges.

In March of 1977, the defendant was arrested in Maine, was returned to Massachusetts, and was again taken to Concord. On June 8, 1977, he was arraigned on the present indictments and the trial began.

The defendant filed a motion to dismiss and "assign[ed] as grounds therefor, that he was denied his Constitutional right to a speedy trial." The trial judge denied the motion and on June 23, 1977, filed findings of fact concerning the constitutional claim. The defendant has abandoned that claim and now focuses on the period from August, 1974, to April, 1975, while the defendant was incarcerated at Concord. He now contends that the defendant was not, during this time, advised, pursuant to G. L. c. 277, § 72A, of the complaints pending against him and of his right to a prompt trial. He argues that the trial judge erred in not dismissing the indictments on that ground.

It is clear to us, as the motion and the findings indicate, that there was no intent to raise a § 72A claim. It is significant in this regard that trial counsel, who had filed a notice of appeal on June 21, 1977, and was not replaced until October 7, 1977, does not appear to have attempted to obtain additional or amended findings with reference to § 72A. Further, neither the trial judge nor the prosecuting attorney could recall at the reconstruction hearing that the § 72A matter had been raised.[9] We are confirmed in our conclusion by our examination of the record now before us,[10] from which it appears that trial counsel sought to show that the defendant was not aware of the December 20, 1972, charges against him any earlier than 1977. It was in connection with this attempt that the trial counsel had mentioned § 72A and requested that the complaints be ordered before the court — apparently for the purpose of laying a foundation to show

---

[9] The court stated that: "The prompt denial of the Motion to Dismiss leads me to doubt that any new matter was raised by evidence or oral argument that was not raised by the written motion and my subsequent written Findings of Fact filed two weeks later."

[10] The defendant conceded at the hearing on the motion for a new trial that the reconstruction of the transcript in this connection was adequate.

that the defendant had never been notified of them while in Concord. However, he did not introduce evidence as to the Concord records in this regard or otherwise pursue this line of inquiry,[11] except to elicit from the defendant — whom the trial judge was not required to believe — that he had never received notice. In the circumstances the trial judge could not have been expected to make findings with reference to § 72A, and the prosecuting attorney could not have been expected to attempt a justification if indeed it appeared that a § 72A claim was being raised. See *Commonwealth* v. *Alexander*, 371 Mass. 726, 728-730 (1977); *Commonwealth* v. *Mattson*, 377 Mass. 638, 641 (1979). Nor are we in a position in view of the gap in the evidence and the credibility problems to resolve the § 72A claim.

3. *Reasonable doubt.* The judge's charge on reasonable doubt does not require reversal merely because it analogized to matters "of highest importance" in a juror's "everyday life." Unlike *Commonwealth* v. *Ferreira*, 373 Mass. 116, 129-130 (1977), to which the defendant points, no specific examples were given. "Rather, in a single sentence [the judge] equated the degree of certainty necessary to convict with a desirable but rarely attainable level of certainty in making personal decisions of 'great significance.'" *Commonwealth* v. *Williams*, 378 Mass. 217, 232 (1979). Also, the charge was given before the *Ferreira* case was decided and no exceptions were taken. See and compare *Commonwealth* v. *Hughes*, 380 Mass. 596, 601 (1980). Reading the charge as a whole, we do not believe there was error. It should be clear by now that in charging on reasonable doubt references should not be made to the type of decisions which jurors make in everyday life, but in this case the judge used the phrase "moral certainty," which colored the reference to matters "of highest importance." See *Commonwealth* v.

---

[11] Appellate counsel stated at the reconstruction hearing that trial counsel had told him that "he did mention" the § 72A claim "at least in his final arguments." We find this of little significance in view of the failure of appellate counsel to produce trial counsel.

*Williams,* 378 Mass. at 232-233. See also *Commonwealth v. Gilday,* 367 Mass. 474, 498 (1975). The phrase helped indicate to the jury the unique quality of the decision they were being called upon to make. *Commonwealth v. Ferreira,* 373 Mass. at 130. The jury were further instructed that proof beyond a reasonable doubt, while it does not mean "absolute proof," does "mean proof that fully convinces you as reasonable men and women earnestly seeking the truth . . . . If when all is said and done the Commonwealth fails to satisfy you beyond that doubt, then, the case has not been proven beyond a reasonable doubt." Compare *Commonwealth v. Ferguson,* 365 Mass. 1, 12 (1974); *Commonwealth v. Powers,* 9 Mass. App. Ct. 771, 772-773 (1980).

Throughout the charge the judge emphasized and repeated the words "beyond a reasonable doubt" which "are themselves evocative." *Commonwealth v. Ferguson,* 365 Mass. at 12.

The reference earlier in the charge, with which the defendant finds fault, read in context, pointed out the truism that the jury brings to their task their accumulated everyday experience on the basis of which they make "decisions great and small." This could have had no effect on the later charge on reasonable doubt when the trial judge turned to the defendant's "fundamental rights." If anything, the earlier comment served to contrast the extraordinary decision-making involved in rendering a verdict. We believe the jury were adequately made aware of their duty.

*Judgments affirmed.*