COMMONWEALTH vs. REGINALD SHEFFIELD.

Hampden.  May 6, 1983. — July 8, 1983.

Present: GRANT, CUTTER, & SMITH, JJ.

*Practice, Criminal,* Mistrial, Challenge of jurors, Transcript of evidence. *Evidence,* Photograph, Relevancy and materiality.

The defendant in a criminal case was not denied his rights to trial before a jury properly selected, to due process of law, and to equal protection of the laws as a result of a prosecutor's apparent misuse of peremptory challenges, in violation of the principle stated in *Commonwealth* v. *Soares,* 377 Mass. 461 (1979), which resulted in declaration of a mistrial and a subsequent trial before a jury chosen from a new venire. [343-344]

In the circumstances of a rape trial, no error resulted from the introduction in evidence of twelve police "mug shot" photographs, including photographs of the defendant, which had been shown to the victim shortly after the crime.  [344-346]

At the trial of a criminal case, the judge did not err in excluding from evidence two police pictures of an individual claimed by the defendant to closely resemble the composite picture of the assailant developed at the police station by the victim.  [346-347]

The defendant in a criminal case was not entitled to a new trial for the reason that a transcript of the arguments of counsel and of the judge's charge to the jury was unavailable, where the defendant made no specific claims of error based on the missing material.  [347-349]

COMPLAINTS received and sworn to in the Springfield Division of the District Court Department on August 17, 1979.

Following waiver of indictment by the defendant, the cases were tried in the Superior Court before *Cross,* J., and a motion for a new trial was heard by him.

*Bernard Grossberg* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.  Sheffield, after waiver of indictments, was tried in the Superior Court for rape, sodomy, kidnapping, and assault by means of a dangerous weapon on complaints originally issued by a District Court.  At a first trial (which began on October 29, 1979) before a Superior Court judge and a jury, a mistrial was declared upon motion of defense trial counsel because the judge thought that the prosecutor was violating the principle declared in *Commonwealth* v. *Soares,* 377 Mass. 461, 491-492, cert. denied, 444 U.S. 881 (1979), by inappropriate use of peremptory challenges. At a second trial before a different Superior Court judge, and a jury chosen from a new venire, Sheffield was found guilty upon each complaint.

1.  Sheffield contends that he was denied (a) his right to trial before a jury properly selected (see the *Soares* case, *supra*) and (b) due process and equal protection of the laws, because, at the first trial, the prosecutor (so Sheffield asserts) intentionally engaged in peremptory challenges in a pattern which would require a mistrial.  Sheffield also argues, somewhat obscurely, that this was an improper effort by the prosecutor to obtain a wholly new venire. The mistrial (at the first trial) was granted October 30, 1979, only a few months after the decision (March 8, 1979) in the *Soares* case.  The first judge may have acted on the basis of somewhat less indication of improper use of peremptory challenges than might now be required.  See, e.g., *Commonwealth* v. *Clark,* 378 Mass. 392, 407 n.17 (1979); *Commonwealth* v. *Walker,* 379 Mass. 297, 300-301 (1979); *Commonwealth* v. *Whitehead,* 379 Mass. 640, 645-646 (1980); *Commonwealth* v. *Kelly,* 10 Mass. App. Ct. 847 (1980). Compare *Commonwealth* v. *Gagnon,* 16 Mass. App. Ct. 110, 117-121, 134-137 (1983).  In any event, the declaration of a mistrial by the first trial judge took place before a jury was empaneled and consequently before jeopardy had attached.  See the *Soares* case, at 491-492 & n.36. See also *Commonwealth* v. *Ludwig,* 370 Mass. 31, 33 (1976).

At the second trial, the judge thus correctly denied a defense motion to dismiss the complaints.  He reasonably

proceeded with usual methods of selecting a jury. It was clearly within his authority to do this until and unless, at the new trial, some deliberate effort to avoid the *Soares* rule emerged. See the general discussion in *Commonwealth* v. *Reid,* 384 Mass. 247, 254-256 (1981). Although no such pattern did develop, the judge (at Sheffield's request) did assist in obtaining black representation on the jury by allowing some modifications of the challenge procedure. The jury finally chosen included two black men, one of whom was named foreman. We perceive no error in the jury selection process of which Sheffield properly now can complain.

2. Sheffield's counsel asserts that prejudice resulted from the introduction in evidence, through a police investigator, of the array of twelve police "mug shot" photographs[1] which had been shown shortly after the crime to the victim (seventeen years old at the time of the trial in 1980) in the course of attempts to identify her assailant. This type of proof was considered in *Commonwealth* v. *Blaney,* 387 Mass. 628, 634-640 (1982). Compare *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 309 (1979). The victim in the present case examined the array as a group and set one aside. She then told the police investigator, "It looks like him. I don't want to say its positively him merely by looking at a picture. If I could see him in person, I would know for sure." The investigator testified without objection that Sheffield was the subject of the photograph so set aside by the victim. At a bench conference, the prosecutor proposed to offer the whole array. Defense trial counsel objected to all the photographs being used and asked that the pictures of Sheffield be severed (that is, the profile "mug shot" be

---

[1] At the beginning of the first trial (October 30, 1979) and before the mistrial was declared, defense trial counsel had moved to suppress the evidence (including police photographs) about the identification procedure. After a hearing before the first trial judge, at which the victim and some of the police officers who testified at the second trial also testified, the motion was denied. The use in fact made of police photographs for identification was explored with thoroughness, so defense counsel was afforded comprehensive discovery on this issue.

separated from the front face picture) and that only one of these pictures be introduced. The trial judge offered to have all the photographs appropriately blocked off in some manner. After discussion, defense counsel said, "I feel the prejudice has been done, and I don't want my client's photograph to look different from the others . . . so I'm not going to move that the bottoms be" blocked out (i.e., to prevent them from looking like police photographs). The photographs were admitted as exhibits in the undisguised form in which they were shown to the victim. No request then was made for any limiting or curative instruction.[2]

In the circumstances of the present case,[3] we think that defense trial counsel, perhaps in doubt concerning the most advantageous trial tactics, did not sufficiently and clearly state his objections to the use of the police photographs and their introduction in evidence. He was not denied any requested action with respect to their "sanitization," and he was ambiguous and equivocal in his objections. See Mass.R.Crim.P. 22, 378 Mass. 892 (1979). He, in cross-examination, made use of the pictures in their original

---

[2] Earlier in the trial, defense trial counsel had objected to the introduction of "mugshots" in an attempt "to corroborate the [victim's in-court] identification" of Sheffield as her assailant. The objection then made, however, was not to the use of the term "mugshots" but to the use of the photographs at that stage of the trial.

[3] The victim testified fully as to her opportunity to observe her assailant at the time of the assault (on August 10-11, 1979, in the early hours after midnight), the examination by her of police photographs, the limitations of her eyesight, her efforts to develop a "composite" drawing of her assailant, and her chance meeting on the street near a drug store with the defendant six days after the assault, which enabled her to get his automobile registration number. The main issue in the case was identification of this defendant, who was the son of a local doctor and a graduate of a local high school and of a community college.

This opinion states the somewhat conflicting evidence (including that mentioned briefly below) only so far as deemed necessary to deal with issues argued on this appeal. The victim at trial identified Sheffield (then nineteen years old) as her assailant. She had told the police shortly after the attack that she thought her assailant was about thirty years old and that she had been dragged into a brown station wagon by her assailant, who at the time was shown to have owned a Thunderbird. These aspects of her testimony were fully explored at trial.

form. We recognize, of course, the admonitions about taking precautions in the use of such photographs at criminal trials. See the *Rodriguez* case, 378 Mass. at 309; *Commonwealth* v. *Lockley*, 381 Mass. 156, 165-166 (1980), and cases cited. Although the matter is not free from doubt, we conclude that the present case comes within the area discussed in the *Blaney* case, 387 Mass. at 636-640, and that, in the circumstances, the second trial judge on this issue acted reasonably and without prejudice to Sheffield's interests.[4]

3. Sheffield's present counsel contends that it was error for the judge to exclude at the second trial two police pictures (marked for identification only) of one Joseph Simmonds, one of which (a 1975 photograph) was available in the police files in August, 1979, when attempts at photographic identification of the victim's assailant were in progress. The other picture was not taken until after August, 1979. The argument was made that Simmonds closely resembled the composite picture of the assailant developed at the police station by the victim. The offer of this photograph was not made in connection with the hearing (see note 1, *supra*) early in the first trial on the motion to suppress the evidence about the identification procedure. It was not shown that the officers who prepared the photographic array in August, 1979, were then aware of the 1975 Simmonds photograph or that they deliberately selected other photographs from the photographs in their custody of males having a general resemblance to Sheffield or to the composite drawing. It was clearly appropriate for the judge to exclude (as lacking relevance) these photographs, particularly (a) as the judge offered to afford defense counsel a voir dire so that counsel could attempt to justify his proposed use of the picture, and (b) as there was no proof that Simmonds was in the Springfield region at the time of the offenses, or was in any way a suspect, or that there was

---

[4] It may be significant that no effort was made (when Sheffield took the stand) to impeach his credibility by proof of prior convictions, if there had been any.

other reasonable foundation for the introduction of the picture.[5]  See Liacos, Massachusetts Evidence 77, 408-409 (5th ed. 1981).  Cf. *Commonwealth* v. *Murphy*, 282 Mass. 593, 598-600 (1933); *Commonwealth* v. *Dougan*, 377 Mass. 303, 312-318 (1979).  Cf. also *Commonwealth* v. *Ferreira*, 381 Mass. 306, 311-313 (1980).

4.  Sheffield argues that the failure to provide him with a transcript of the arguments of counsel and of the judge's charge at the second trial denies him his constitutional rights.[6]  Sheffield's present appointed counsel was not his counsel at the second trial.  New counsel on February 22, 1982, filed an amended motion for a new trial, reciting the difficulties which had been encountered by the parties, their counsel, and the clerk's office in obtaining these limited portions of the transcript of the second trial.  On April 9, 1982, after hearing, the trial judge in essence found that the failure to receive these parts of the transcript was because the court stenographer "had unexpectedly left the Commonwealth" and now "resides in Nevada."  Neither her "notes nor the transcript" can be found nor can contact be made with her.  The judge also found (a) that he "had no particular memory" of Sheffield's second trial and that his trial notes were not available; (b) "that [defense] trial counsel . . . [had] no memory of whether . . . he objected to any portion of the . . . charge," that counsel's file contained no notes about the jury instructions, and that, if he did anything at trial, he would have relied upon the transcript to reflect his objection; and (c) that the prosecutor had no memory (or notes) regarding the jury instructions or whether there were objections to those instructions.  The

---

[5] We ourselves have examined all the photographs of black males received as exhibits and the two photographs of Simmonds marked for identification.  Any resemblance of the Simmonds photographs to the photographs of Sheffield or to the composite drawing is general and not very close.  We are of opinion that the exclusion of the Simmonds photographs was not an abuse of discretion.

[6] A transcript of all other matters related to the second trial was furnished to counsel.

trial judge then denied the motion for a new trial.[7] We consider the matter on the basis that neither Sheffield nor the prosecutor is in any way responsible for the unavailability of the transcript.

In Massachusetts, the governing case is *Commonwealth v. Harris*, 376 Mass. 74 (1978). There a transcript was missing because of the theft of the stenographer's notes. The Supreme Judicial Court ruled (at 78) that "the fact that the transcript is unavailable through no fault of the parties does not warrant a new trial unless the trial proceedings cannot be reconstructed sufficiently to present the defendant's claims." Because no attempt there had been made to reconstruct the events at trial, the *Harris* case was remanded to the Superior Court for an attempt to do this.

In remanding the *Harris* case, the Supreme Judicial Court (at 79-80) outlined the course thereafter to be pursued: "If the events at trial can be sufficiently reconstructed, a bill of exceptions should be developed . . . as the basis of any appeal which the defendant wishes to pursue. If the judge determines that the proceedings cannot be *sufficiently* reconstructed, he shall so certify and allow the motion for a new trial. If the events at trial cannot be *completely* reconstructed, the judge should determine whether the reconstructed record is *adequate to present any errors alleged by the defendant*. When a transcript is unavailable

---

[7] One further piece of information about the jury charge is available. The Superior Court dockets show that on February 14, 1980, Sheffield's trial counsel filed requests for instructions which the judge endorsed as "Allowed." Examination of the original requested instructions (in the Superior Court papers, reproduced in the Commonwealth's request for direct appellate review which was denied by the Supreme Judicial Court on April 27, 1983) shows that the allowed requests related to the suggested charge on identification appended to *Commonwealth v. Rodriguez*, 378 Mass. at 310-311 (decided June 21, 1979), a photocopy of which was attached to the allowed request for instructions. At a hearing on December 21, 1981, the trial judge showed that he had become familiar with the *Rodriguez* suggested charge when that decision was released. He then stated that thereafter he "usually" or "always" gave that charge where identification was an issue. We infer that, since he allowed the request, this experienced judge did at trial what was asked.

and a full record thus cannot be obtained, allowing review on the basis of the portions of the record dealing with the defendant's claims provides adequate appellate review for the defendant" (emphasis supplied and footnote omitted). The opinion then referred to *Commonwealth* v. *Kudish,* 362 Mass. 627, 632 (1972).

Later cases have been much to the same effect. See *Charpentier* v. *Commonwealth,* 376 Mass. 80, 86 n.6 (1978); *Katz* v. *Commonwealth,* 379 Mass. 305, 313 (1979); *Commonwealth* v. *Chatman,* 10 Mass. App. Ct. 228, 229-232 (1980), where (at 232) there was comment by Mr. Justice Goodman upon the requirement in the *Harris* case of a record "reconstructed sufficiently to present the defendant's claims." The opinion stated, "Implicit in this formulation — *at least where trial counsel is available* — is the requirement that the defendant come forward with *articulable* claims with reference to which the reconstruction can be judged" (emphasis supplied).

In the present case, as in the *Chatman* case, Sheffield's new counsel makes no specific claims of error based on the missing material. It seems to us that, if the second trial judge had committed any error of moment, or if the prosecutor had made any significantly improper argument, defense trial counsel would have recalled it. Particularly in view of the inference which we draw (note 7, *supra*) that the *Rodriguez* instruction (378 Mass. at 310-311) was given, presence of the missing transcript would serve only to permit new defense counsel to search for unremembered errors where there is no articulate claim by any actual participant in the second trial that any such error exists.

*Judgments affirmed.*