Armand R. THERRIEN,
Plaintiff, Appellant,

v.

George R. VOSE, Jr.,
Defendant, Appellee.

No. 85–1332.

United States Court of Appeals,
First Circuit.

Heard Oct. 10, 1985.

Decided Jan. 22, 1986.

William C. Madden, Boston, Mass., was on brief, for plaintiff, appellant.

Martin E. Levin, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., were on brief, for defendant, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and HILL,* Senior District Judge.

TORRUELLA, Circuit Judge.

Armand Therrien appeals the district court's denial of his petition for habeas corpus, 28 U.S.C. § 2254. In September, 1975, the appellant was tried before a jury in the Massachusetts Superior Court of Norfolk County for several counts of murder and assault arising from a single incident. He was convicted of murder in the first degree of United States Army Captain John Oi and police officer William Sheehan; of assault with intent to murder police officer Robert O'Donnell; of assault and battery with a dangerous weapon; and of unlawful possession of a weapon. Therrien was sentenced to two consecutive life terms on the murder charges and two five to ten year concurrent sentences on the assault charges. The Massachusetts Supreme Judicial Court affirmed the convictions in October 1976. *Commonwealth v. Therrien*, 371 Mass. 203, 355 N.E.2d 913 (1976). In September 1981, the Norfolk Superior Court denied Therrien's motion for a new trial. Therrien's application for a special appeal in cases involving first-degree murder convictions was denied, and the appeal was dismissed. A subsequent motion for post-conviction relief also proved unsuccessful. *Commonwealth v. Therrien*, SJC No. 82–253 Civil, Order Denying Application, August 11, 1982. At this point, Therrien had exhausted his state remedies.

Thereafter, Therrien filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts. The district court dismissed the petition but allowed a certificate of probable cause for this appeal on March 27, 1985. As grounds for his appeal, the petitioner alleges ineffective assistance of counsel; failure of the trial judge to ensure an impartial jury; prosecutorial misconduct; a faulty charge to the jury; and the unlawful imposition of consecutive life sentences.

During the nine-day jury trial, in which the defendant testified on his own behalf, two very different versions of the incidents leading to the defendant's arrest emerged. The story told by police officer O'Donnell was as follows. O'Donnell testified that he and a fellow police officer, Sheehan, came across Captain John Oi's car parked on the side of the road. Captain Oi was slumped over the steering wheel and Therrien was sitting beside him in the passenger's seat. As the officers approached the car, Therrien emerged, saying something to the effect that his friend in the car was sick and that Therrien was going to drive him home. As O'Donnell neared the car, he saw that Oi's face was bloodied. At that moment Therrien opened fire on the officers, killing Sheehan almost instantly and wounding O'Donnell. Despite his injury, O'Donnell managed to wrest Therrien's gun from him, draw his own revolver, and shoot Therrien. A third police officer arrived and arrested Therrien.

Captain Oi was taken to a hospital where he died that evening from bullet wounds in the head inflicted by the defendant's gun. It was also later discovered that O'Donnell had been hit by bullets from both Therrien's and Sheehan's weapons. A possible motive for the murder of Captain Oi was Therrien's interest in an insurance policy on Oi's life taken out in connection with a business venture entered into by Oi, Therrien, and two others.

* Of the Central District of California, sitting by designation.

Therrien's version of the facts surrounding the episode stood in stark contrast to that of officer O'Donnell. He testified that, while Captain Oi was driving the car, Oi had lost his temper, beaten Therrien unconscious and taken his gun. When Therrien awoke he found himself lying next to the car. Therrien testified that the officers nearby were fighting and firing at each other, with O'Donnell presumably using Therrien's gun which he had taken from Oi. O'Donnell and Therrien then wrestled, during which time Therrien's gun went off while in O'Donnell's hand. Then O'Donnell drew his own revolver and shot Therrien.

In this habeas action, Therrien sets forth several grounds for relief. First, he contends that he received ineffective assistance of counsel. The standard for ineffective assistance of counsel has been set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court stated: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 2064. For a successful claim, the defendant must meet a two-pronged test, showing first that counsel's performance was deficient, and second that the deficiency prejudiced the defense. *Id.* On careful review of the record, we cannot see that the petitioner/appellant has met either one of these requirements.

Therrien relies primarily on the following colloquy between his trial counsel, Alch, and the court, to prove that Alch was incompetent because he was not aware of his need to object to save issues for review:

Alch: Am I correct that it's not necessary for me to make an exception in preserving the record?
The Court: I forget that we changed the rules, this is a murder trial so don't worry about it if I make any mistakes. I will try not to.
Alch: I didn't mean it that way.
*End of Bench Conference.*

In telling counsel "not to worry" because this was a murder trial, the court was referring to the fact that the Massachusetts Supreme Judicial Court has the power to review the entire record in a capital case. M.G.L. c. 278, § 33E.

Therrien apparently wants this court to presume automatically that the trial process by which he was convicted was rife with reversible errors, objections to which should have been preserved for appellate review. He states that during trial his counsel "failed to point out specific violations that took place at trial." The petitioner fails, however, to explain what "specific violations" did occur or how these supposed errors prejudiced his case. Similarly, Therrien claims ineffective assistance of counsel on appeal because: "In this case nothing was assigned as error or briefed that would reveal to the Supreme Judicial Court the errors of defense counsel at trial." Again, the only specific problems that the petitioner cites are those that are already briefed separately and considered below.

▮▮ We will not assume, simply as a matter of course, as Therrien would have us do, that serious errors were made during the trial process and that defense counsel failed to note them. On the contrary, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Perron v. Perrin*, 742 F.2d 669, 673 (1st Cir. 1984) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984)). With no showing by the petitioner of specific errors, nor any indication that errors, if existing at all, prejudiced the defense or affected the result, we reject the petitioner's claim of ineffective assistance of counsel.

The petitioner next claims that the trial judge failed to ensure the selection of an impartial jury. This argument is based entirely on the trial court's failure to pose the following three questions to prospective jurors:

# 21 Will you give the testimony of a police officer more credence than that

of other witnesses merely because he is a police officer?

\# 60 Would you think a police officer has more credibility than a person who is not a police officer?

\# 61 Would you give greater credence to the testimony of a law enforcement officer merely because he is such an officer?

■ In a case such as this, where the prosecution relies heavily upon the testimony of police officers, the trial judge must be cognizant of the risk that jurors might give more credence to witnesses called by the prosecution. In certain circumstances, the refusal of a judge to ask prospective jurors questions designed to weed out such bias may be reversible error. *See United States v. Pappas*, 639 F.2d 1, 4–5 (1st Cir. 1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

■ When a problem of potential juror bias arises, the trial judge has a great deal of latitude in determining how best to handle the *voir dire*. *See Ristaino v. Ross*, 424 U.S. 589, 594–95, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976). The Supreme Court has held that a defendant's right to an impartial jury can be satisfied without the court's inquiring into every specific prejudice feared by the defendant. *Ristaino v. Ross, supra* at 594–95, 96 S.Ct. at 1020; *Ham v. South Carolina*, 409 U.S. 524, 527–28, 93 S.Ct. 848, 850–51, 35 L.Ed.2d 46 (1973).

■ The record here indicates that the court took adequate measures to guard against jury bias favoring the police officer's testimony. The judge emphasized to the jurors their responsibility in remaining objective and examining whether particular witnesses had any personal interest in testifying one way or another. Here, where police officer O'Donnell was himself allegedly a victim of the crime, they had to consider carefully the credibility of his story in light of his interaction with the defendant. The court also screened out jurors who had any relationship with anyone engaged in law enforcement. We conclude

that the jury was properly instructed as to its role in weighing the witnesses' testimony and there was no constitutional error in the judge's failure to ask the precise questions requested.

The appellant also claims that the prosecutor improperly commented on the evidence and expressed his personal views on the case, thereby warranting reversal of the conviction. Although he argues the transcript is rife with examples of egregious prosecutorial conduct, the appellant cites in his brief only the single following statement from the prosecutor's closing argument:

We have given you some evidence and we are not hanging our hat on that. We are not telling you that this is the only thing it could have been. What we are saying is we know he shot them.

The appellant argues that the statement "we know he shot them" is essentially unsworn testimony, not subject to cross-examination, that violates his due process rights. We cannot agree.

■ While a prosecutor may not manipulate or misrepresent evidence, *see Donnelly v. de Christoforo*, 416 U.S. 637, 646–48, 94 S.Ct. 1868, 1872–74, 40 L.Ed.2d 431 (1974), it is his responsibility to marshal the evidence in his closing argument in a manner that will prove the government's case. Having reviewed the transcript, we find the prosecutor did not exceed the permissible bounds of advocacy for the state. At the outset of his argument, he specifically told the jury that it was their recollection of the evidence—and not his—that "counts." The judge, too, admonished the jury that their understanding of the evidence was not to be governed by the recitation of the evidence presented by the trial attorneys. We find that, in the total context of the prosecutor's remarks, none of the prosecutor's statements would warrant the granting of a retrial. *Cf. Salemme v. Ristaino*, 587 F.2d 81 (1st Cir.1978); *United States v. Rusmisel*, 716 F.2d 301 (5th Cir.1983).

The appellant next claims that the jury charge was flawed in two respects. He contends that the instructions had the ef-

 

fect of imposing a mandatory presumption of malice and establishing a presumption in favor of the commonwealth. In support of this, the appellant makes no further argument but simply cites the two cases of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We can find no principles set forth in those cases that would run contrary to or cast doubt upon the constitutionality of the jury charge given here.

The court's instruction regarding the inferences the jury might draw from the evidence are similar to the instruction on a permissive presumption that we approved in *McInerney v. Berman,* 621 F.2d 20 (1st Cir.), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980). The charge on reasonable doubt also was proper, particularly in light of our holding in *Grace v. Butterworth,* 635 F.2d 1, 7 (1st Cir.1980), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). We agree that the trial court's instructions taken together with the curative remarks made at the request of defense counsel afforded Therrien all of the constitutional due process to which he was entitled. *See Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Gagne v. Meachum,* 460 F.Supp. 1213, 1218–20 (D.Mass. 1978), *aff'd,* 606 F.2d 471 (1st Cir.1979), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1980).

Finally, the appellant contends that the imposition of two consecutive life sentences violates the Constitution's double jeopardy clause. U.S. Const., 5th amend., cl. 2. Therrien argues that, under the court's instructions, the jury conceivably could have found that Therrien was guilty of the murder of Officer Sheehan based solely on their finding that he had committed the underlying felony of murdering Captain Oi. Hence, the argument runs, Therrien would be punished for the same illegal act twice.

█ We agree with the district court that this argument is wholly without merit. The murders of Officer Sheehan and Captain Oi were two distinct offenses. Each

was required to be separately proved and independently supported by the prosecution's evidence. In addition, the two offenses each carried their own penalties and the imposition of multiple sentences under these circumstances in no way violated the double jeopardy clause. *See Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980); *Albernaz v. United States,* 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981).

The decision of the district court to dismiss Therrien's petition for a writ of habeas corpus is affirmed in all respects.

*Affirmed.*