**Reginald SHEFFIELD, Petitioner,**

v.

**John CURRAN, Respondent.**

**Civ. A. No. 84–0015–T.**

United States District Court,
D. Massachusetts.

Oct. 17, 1986.

**860**

Bernard Grossberg, Boston, Mass., for petitioner.

Martin E. Levin, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM

TAURO, District Judge.

Petitioner in this case was convicted in Massachusetts state court of rape. He had two trials. The first was held in October 1979 and ended in a mistrial. Petitioner was convicted at the second trial, in February 1980. The Massachusetts Appeals Court affirmed the convictions. *Common-* *wealth v. Sheffield*, 16 Mass.App.Ct. 342, 451 N.E.2d 132 (1983). The Massachusetts Supreme Judicial Court twice denied review. *Commonwealth v. Sheffield*, 390 Mass. 1104, 456 N.E.2d 469 (1983); *Commonwealth v. Sheffield*, 393 Mass. 1101, 469 N.E.2d 830 (1984). Petitioner seeks a writ of habeas corpus from this court. He makes four arguments in support. As discussed below, this court finds all of them unavailing, and denies the petition for a writ of habeas corpus.

### I

■ Petitioner's first argument relates to the effect of the mistrial. During the empanelling of the first jury, petitioner's trial counsel objected to the prosecutor's peremptory challenging of jurors, allegedly on the basis of race. Petitioner is black; the victim is white. Applying a state decision, *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), the trial judge found a pattern of race-based challenges with no satisfactory explanation, and declared a mistrial. At the subsequent trial in February 1980, petitioner moved to dismiss the criminal complaints on double jeopardy grounds.[1] This motion was denied. Petitioner argues here that the prosecutorial misconduct in the first trial and the subsequent refusal to dismiss the charges against him violated his rights under the sixth amendment and the due process, equal protection, and double jeopardy clauses.

■ As a general rule, double jeopardy does not bar retrial of a defendant who obtains a mistrial by his own motion. *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). But, as petitioner points out, when prosecutorial misconduct "intended to 'goad' the defendant into moving for a mistrial" in fact does so, double jeopardy bars prosecution. *Oregon v. Kennedy*, 456 U.S. 667,

---

1. Petitioner also moved to seat black and/or hispanic jurors. This motion was denied. Peti-    tioner does not argue this issue here.

676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).

Regardless of the propriety of the government's conduct in this case, however, petitioner's double jeopardy claim fails simply because his double jeopardy right had not yet attached when the mistrial was declared. The double jeopardy right does not attach until the jury has been empanelled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

Nonetheless, petitioner argues that double jeopardy principles require overturning convictions, like his, where intentional prosecutorial misconduct during jury empanelling forces defendants to seek mistrials. Petitioner cites no federal precedent supporting this view.[2] This court declines to expand federal constitutional law to accommodate petitioner in this case.

■ The gist of petitioner's other constitutional arguments on this issue appears to be that the prosecutor's misconduct deprived him of his right to a jury chosen from a fair cross section of the community. This argument fails. The relevant principles on race-based juror challenging recently established by the Supreme Court in *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), have no application to this case. The Court has ruled that *Batson* is not to be applied retroactively to cases, like petitioner's, that became final before *Batson* was decided. *Allen v. Hardy*, —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). Under the applicable pre-*Batson* federal constitutional law, in order to prevail on this claim petitioner must show that blacks and hispanics were disproportionately underrepresented on jury venires in the community where he was tried, as a result of "systematic exclusion ... in the jury selection process." *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579

(1979); *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Petitioner has not attempted, nor could the record support, such a showing.

## II

■ The principal issue at the full trial was the victim's identification of petitioner. The day after the rape, the police developed a composite sketch based on the victim's description of her assailant. A few days thereafter, the police showed her an array of 12 mugshots,[3] including petitioner's. She tentatively identified petitioner from the photographs, and confirmed her identification in court. The Commonwealth introduced the 12 mugshots into evidence, over defense counsel's objections that they be "sanitized" so as not to be recognizable as mugshots. Petitioner argued that from a mughshot of petitioner the jury could infer that he had a prior criminal record, which he did not. The resulting prejudice, petitioner asserts, deprived him of due process of law.

■ Evidentiary rulings in state criminal trials violate due process only if they render those trials fundamentally unfair. *Spencer v. Texas*, 385 U.S. 554, 563–64, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967). The admission of mugshots into evidence requires reversal on federal habeas review only when the prejudicial value of the photos " 'greatly' outweighs" their probative value. *United States ex rel. Bleimehl v. Cannon*, 525 F.2d 414, 421 (7th Cir.1975).

Identification was the key issue in this case. The array, including petitioner's photo, was highly probative of the accuracy of the victim's initial identification and the reliability of her in-court identification. In contrast, the only prejudice petitioner complains of is that the jury might have inferred from the police department's possession of petitioner's photos that he had a

---

**2.** To the extent petitioner relies on Massachusetts cases in his brief he misconstrues the scope of federal habeas review, which is to remedy violations of federal rights, not to correct state courts' application of state law.

**3.** The photos presented the familiar paired frontal and profile views—the frontal view showing a placard reading "Springfield Police Department"—and had identifying information printed on them.

criminal record. Petitioner does not claim that the prosecutor ever bolstered this inference in any other way. In fact, defense counsel referred to the pretrial identification procedure repeatedly, and even in his opening statement presented the theory that the police unfairly promoted petitioner as the victim's assailant. The fact that the police had photos of the petitioner and presented them to the victim is part of that theory. It cannot be said that the prejudice suffered from admitting the mugshots greatly outweighed their probative value, much less that they rendered the trial fundamentally unfair.[4]

### III

█ Petitioner's trial counsel sought to admit into evidence photos of one Joseph Simmons, which the police had in their files when they showed the array of mugshots to the victim. Counsel argued that Simmons bears a striking resemblance both to petitioner and to the composite sketch based on the victim's description. The Simmons photos were relevant, he argued, on the issue of identification and to show that another person committed the crime. The trial judge excluded the photos. Petitioner argues here that this exclusion violated his sixth amendment right to present a defense.

The standard for reviewing this claim "is not whether some other judge might have been more flexible than the judge who handled the case but rather whether his ruling was so arbitrary as to violate the fundamental protections contained in the sixth amendment." *Blaikie v. Callahan*, 691 F.2d 64, 69 (1st Cir.1982).

The trial judge's exclusion of the Simmons photos was certainly not arbitrary. No evidence was offered linking Simmons to the crime in any way or even placing him in its vicinity. The only evidence that the Simmons photos resemble petitioner was trial counsel's assertion to that effect. The only connection counsel was able to establish between the photos and petitioner's case was that the police possessed at least one of them, amid thousands in the police records files, before the array of mugshots was shown to the victim. The trial judge offered counsel a voir dire examination on the photos, but he declined. The trial judge quite reasonably could have considered the Simmons photos collateral to both issues on which they were assertedly relevant. His exclusion of the photos was not arbitrary, and therefore did not violate petitioner's sixth amendment rights.

### IV

█ Petitioner's final argument relates to the loss of a portion of the transcript of his trial. It is undisputed that before petitioner's appeal to the Massachusetts Appeals Court, a portion of the transcript containing closing arguments, jury instructions and sentencing was lost, through no fault of petitioner's. Petitioner moved for a new trial. The trial judge attempted to reconstruct the unrecorded portion of the trial, but neither he, nor trial counsel (different from appellate counsel), nor the prosecutor, could recall details of that portion of the trial, including whether or not objections were made. Petitioner argues that the transcript loss violated his right to an appeal and his due process and equal protection rights.

The First Circuit has not determined what standard of review applies to lost transcript claims raised in federal habeas proceedings attacking state convictions.[5]

---

4. Petitioner and respondent dispute whether trial counsel adequately objected to admission of the mugshots in their "unsanitized" state. For purposes of this petition, this court assumes the objection was adequate.

5. Petitioner cites several federal cases requiring provision of a complete transcript on appeal. The courts in all of these cases were sitting in direct review of federal convictions, and based their rulings on either statutory requirements or the supervisory powers of appellate courts. *See, e.g., Hardy v. United States*, 375 U.S. 277, 282, 84 S.Ct. 424, 428, 11 L.Ed.2d 331 (1964) (federal defendant on in forma pauperis appeal deserves complete transcript, but court "deal[s] only with the statutory scheme and do[es] not reach a consideration of constitutional requirements"). Because this court must apply the constitutional requirements, these cases are inapposite.

The Fifth Circuit, however, recently addressed the issue. Petitioner in *Schwander v. Blackburn*, 750 F.2d 494 (5th Cir. 1985), appealed his state conviction using a transcript lacking the jury voir dire, opening and closing statements, jury instructions, and additional jury questions. As here, petitioner in *Schwander* was represented on appeal by counsel other than his trial counsel. Because the transcript was complete for those parts of the trial in which error was assigned, and counsel recalled no error in the unrecorded portion of the trial, the Fifth Circuit held that the loss of a portion of the transcript did not require reversal of the state conviction on federal habeas review. *Id.* at 498.

An analogous First Circuit case that contains reasoning similar to that in *Schwander* leads this court to believe that faced with the precise issue presented here, the First Circuit would adopt the *Schwander* rule. In *Therrien v. Vose*, 782 F.2d 1 (1st Cir.1986), a habeas petitioner complained that his sixth amendment rights were violated because his trial counsel did not know he had to make contemporaneous objections to preserve issues for appeal, and hence made none. The First Circuit rejected the argument, because petitioner could not point to any specific errors at trial: "We will not assume, simply as a matter of course, ... that serious errors were made during the trial process and that defense counsel failed to note them." *Id.* at 3. *Therrien* thus reveals the First Circuit's aversion to overturning convictions for unspecified errors at trial.

Petitioner admits that he does not claim error in any part of the trial not transcribed. The trial judge found that petitioner's trial counsel could not remember objecting to the jury instructions, and had no notes of objections, but would have relied on the transcript to reflect his objections. *Commonwealth v. Sheffield*, 16 Mass.App.Ct. 342, 347, 451 N.E.2d 132 (1983). Those portions of the proceedings below where error was assigned—the mistrial, admission of the mugshots, and exclusion of the Simmons photos—were fully transcribed. Under the *Schwander* rule

set out above, which this court adopts, the loss of portions of petitioner's transcript did not violate his constitutional rights.